1
2
3
4

UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

OAKLAND DIVISION

7
8

MIKE MAPLES, JR.,

Case No:  C 12-6066 SBA

9

Plaintiff,

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

10

vs.

11

SOLARWINDS, INC., and DOES 1-5,

Dkt. 43

12

Defendants.

13
14

    This is a diversity jurisdiction action brought by Plaintiff Mike Maples ("Plaintiff"

15

or "Maples"), who alleges that Defendant SolarWinds, Inc. ("Defendant" or "SolarWinds")

16

is refusing to allow him to exercise his stock options in violation of their written

17

agreements.  The parties are presently before the Court on Defendant's Motion for

18

Summary Judgment, or in the Alternative, Partial Summary Judgment.  Dkt. 43.  Having

19

read and considered the papers filed in connection with this matter and being fully

20

informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the

21

reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution

22

without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

23

**I.    BACKGROUND**

24

    **A.    FACTUAL SUMMARY**

25

    SolarWinds is a Texas-based company that develops enterprise information

26

technology ("IT") infrastructure management software for IT professionals.  In 2007,

27

SolarWinds became interested in retaining Maples, a venture-capitalist with experience in

28

the technology sector, as an advisor.  Foster Decl. Ex. 4 ("Van Zant Decl.") ¶ 4, Dkt. 58-5.

1   Kenny Van Sant ("Van Sant"), then SolarWinds' Chief Product Strategist, knew Maples

2   from having worked with him at Motive Communications, a company Maples co-founded.

3   Id. ¶ 4.  Then Chief Executive Officer Michael Bennett ("Bennett") and Van Zant discussed

4   the terms and structure of the proposed relationship with Maples, and envisioned that the

5   consulting agreement would "auto-renew" after the initial four-year term, until one party

6   explicitly cancelled it.  Id. ¶ 9.

7          On August 6, 2007, SolarWinds sent an offer letter ("Advisor Agreement") to

8   Maples to memorialize their agreement.  Compl. Ex. C.  The first paragraph of the Advisor

9   Agreement states:

10              This letter confirms SolarWinds.net, Inc.'s ("SolarWinds")
               invitation to you to serve as an Advisor for SolarWinds.
11              Although currently, we do not expect to have any formal
               meeting of the Advisory Board, we would like you to provide
12              advice to various members of our executive team from time-to-
               time as described below over a four year term beginning August
13              13, 2007. . . .

14   Id. at 1.  The services Maples was expected to provide included an introductory half-day

15   meeting; bi-weekly hour-long telephone calls and informal calls with the Vice-Presidents of

16   Marketing, Strategy and Product Marketing; and quarterly meetings with various

17   executives.  Id.  In exchange for providing these services, SolarWinds agreed to

18   compensate Maples solely in the form of stock options:

19              In consideration of your willingness to serve on our advisory
               board and attend its meetings, SolarWinds agrees to compensate
20              you as follows:

21                  •   SolarWinds will grant you a non-statutory stock option
                       to purchase 5000 shares of SolarWinds common
22                     stock. . . . .  The options will be granted pursuant to, and
                       subject to the terms of, SolarWinds' standard stock
23                     option plan.  Assuming an optionee's continued
                       membership on the advisory board and participation in
24                     its meetings from the date of grant until four years from
                       the grant date, these options will vest and will be become
25                     fully exercisable on that date.  The options will expire on
                       the earlier of three months after the termination of
26                     service on the advisory board (or such period as
                       SolarWinds' board of directors may permit) or ten years
27                     from the date of the grant.

28

Id. at 2 (emphasis added).  The Advisor Agreement was signed by Bennett on behalf of SolarWinds, and countersigned by Maples.  Id.

In connection with his retention, Maples also executed a Stock Option Agreement.[1] Section I of that agreement, entitled "Notice of Stock Option Grant," specifies that 5,000 stock options were granted as of October 25, 2007, and that the "Term/Expiration Date" of those options is October 25, 2017.  Id. Ex. D at 1.  That section also states that:  "This Option shall be exercisable for ninety (90) days after the Participant ceases service or employment with the employer for reasons other than Cause, death or Disability. . . . Notwithstanding the foregoing, in no event may this Option be exercised after the Term/Expiration Date as provided above . . . ."  Id. at 2 (emphasis added).  The Stock Option Agreement "is governed by the substantive laws but not the choice of law rule of Oklahoma."   Id. at 5.

Though SolarWinds contemplated hiring additional advisors and forming an advisory board, that never transpired.  Van Zant Decl. ¶¶ 6-8.  Nonetheless, Maples provided advisory services in person, by telephone and email to various individuals at SolarWinds, including Van Zant, Bennett and Rita Selvaggi ("Selvaggi"), SolarWinds' Vice-President of Marketing.  Id. ¶ 11; Foster Decl. Ex. 2 ¶ 4, Dkt. 58-3.  By 2010, Bennett, Van Zant and Selvaggi had left SolarWinds.  Foster Decl. Ex. 4 ¶ 2; Sims Decl. Ex. A at 19:4-5, Dkt. 44-1; id. Ex. E at 9:8-18.  The last time Maples provided consultation to anyone at SolarWinds was some time in 2010.  Sims Decl. Ex. B at 150:3-11.  However, Maples testified in his deposition that neither side has given notice to the other that his role as an advisor had been terminated, and to this day he remains willing and available to provide advice to SolarWinds.  Foster Decl. Ex. 3 at 153:6-154:12, Dkt. 58-4.

Towards the end of 2011, Maples was going through a divorce.  Foster Decl. Ex. 3 at 183:21-184:18.  While having the means to support himself independently, Maples was

---

[1] The Advisor Agreement references "SolarWinds' standard stock option plan." Compl. Ex. C at 1.  That "plan" appears to refer to the Stock Option Agreement, attached to which is a Stock Incentive Plan.  Id. Ex. D.

concerned that his wife did not.  Id.  As a result, Maples believed that, given the high stock

valuation[2], it was an opportune time to exercise his options.  Id.  Maples consulted his wife,

and she agreed with his plan.  Id.  To that end, on December 2, 2011, Maples contacted

SolarWinds through its Investor Relations email address, stating:

> Hi! I am an advisor to SolarWinds and was awarded some
> options by Mike Bennett in 2007.
>
> I was hoping to exercise and sell them but I am not sure who
> the best contact at SolarWinds is to close the loop.  Could you
> please help me to file the right person to connect with?
>
> Thanks!

Foster Decl. Ex. 11.  On January 12, 2012, Mike Berry ("Berry"), then Chief Financial

Officer of SolarWinds, responded to Maples' inquiry.  Id. Ex. 12.  Berry stated:

> I checked with our Legal team, you were granted 5,000 options
> in October 2007 and there was a subsequent 3 for 1 split so you
> have 15,000 options with a strike price of $4.3467 per option.  I
> have attached a statement from our option system with the
> details.
>
> If you have any questions or want to exercise these in the future
> you would need to contact Michael Snyder or Jason Bliss in our
> legal department, they are copied on this email for your future
> reference.

Id. (emphasis added).  The attached Optionee Statement indicates that as of November 11,

2011, Maples had 15,000 options that expire on "10/25/2017."  Id.[3]

On April 17, 2012, Maples emailed Jason Bliss ("Bliss"), then SolarWinds'

Associate General Counsel, stating that he wanted to exercise his options.  Id. Ex. 17.  The

next day, Bliss responded, "Mike, no worries – I'll get you an answer by tomorrow."  Id.

Bliss did not follow up with Maples; instead, on April 20, 2012, Maples received an email

from Berry asking him to call.  Id. Ex. 18.  Maples called Berry, who stated that his options

---

[2] SolarWinds became a publicly-traded company following its initial public offering
in 2009.

[3] SolarWinds' December 2011 10-K also indicated that Maples' options were
outstanding.  Id. Ex. 12.

had expired, and that "there was nothing he could do." Maples Decl. ¶ 7.  The following

Monday, Maples emailed Berry, explaining that he never resigned from his advisor role and

that SolarWinds should honor the options, particularly since they were the sole

compensation for his services.  Foster Decl. Ex. 19.  Berry did not respond.  Instead, Bryan

Sims ("Sims"), General Counsel for SolarWinds, emailed Maples claiming that his options

expired "90 days after the advisory agreement ended [on August 12, 2011]." Id.  Sims also

rhetorically questioned what possible advice Maples could have provided to SolarWinds

since Bennett, the CEO who had hired Maples, left the company in 2010.  Id.

### B.   PROCEDURAL HISTORY

On August 17, 2012, Maples filed the instant action against SolarWinds in San

Mateo County Superior Court.  The Complaint alleges seven causes of action, styled as

follows:  (1) Breach of Contract (Stock Option Agreement); (2) Breach of Agreement

(Advisor Agreement); (3) Breach of Contract (Covenant of Good Faith and Fair Dealing);

(4) Wrongful Discharge in Violation of Public Policy; (5) Unjust Enrichment;

(6) Promissory Fraud; (7) Unfair Competition.  On November 29, 2012, Solarwinds

removed the action on the basis of diversity jurisdiction.

SolarWinds has now filed a motion for summary judgment, or alternatively, partial

summary judgment, as to all causes of action alleged in the Complaint.  Maples opposes the

motion, except as to his causes of action for wrongful discharge and promissory fraud,

which he seeks to voluntarily dismiss.  The motion is fully briefed and is ripe for

adjudication.[4]

---

[4] In its reply, SolarWinds objects to certain statements in the Maples and Van Zant declarations. Dkt. 59. Because those statements are not germane to the Court's ruling, the objections are overruled as moot.  Separately, Maples has filed a motion for leave to file a surreply to address arguments raised by SolarWinds for the first time in its reply.  Dkt. 62. The Court finds that consideration of the surreply is unnecessary and therefore Maples' request for leave is denied as moot.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.  A factual dispute is genuine if it "properly can be resolved in favor of either party."  Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

1    III.    **DISCUSSION**

2          A.    CHOICE OF LAW

3          Federal courts sitting in diversity apply the substantive law of the forum state,

4    which, in this case, is California.  See Gasperini v. Center for Humanities, 518 U.S. 415,

5    427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal

6    procedural law").  When an agreement contains a choice-of-law provision, California

7    courts apply the parties' choice-of-law unless the approach set forth in Restatement

8    (Second) of Conflict of Laws § 187 dictates a different result.  Bridge Fund Capital Corp. v.

9    Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2012).  Under the Restatement, the

10   court first determines "(1) whether the chosen state has a substantial relationship to the

11   parties or their transaction, or (2) whether there is any other reasonable basis for the parties'

12   choice of law."  Nedlloyd Lines B.V. v. Super. Ct., 3 Cal.4th 459, 465-466 (1992).  If

13   neither of these tests is met, "the court need not enforce the parties' choice of law."  Id.  But

14   if either test is met, the court must then determine whether the chosen state's law is

15   contrary to a fundamental policy of California.  Id.  If so, the court must assess whether

16   California has a materially greater interest than the chosen state in the determination of the

17   particular issue; if so, the court applies California law, notwithstanding the parties' choice-

18   of-law provision.  Id. at 1002-1003.

19         Here, the Advisor Agreement does not contain a choice of law clause and therefore

20   California law presumptively applies to issues relating to that agreement.  In contrast, the

21   Stock Option Agreement contains a choice of law clause which states that "[it] is govered

22   by the internal substantive laws but not the choice of law rules of Oklahoma."  Compl. Ex.

23   D § II.12.  Maples argues that, notwithstanding this choice of law clause, California law

24   applies to this action.[5]  The Court agrees.  There is no indication that Oklahoma has a

25   substantial relationship to the parties or their transaction or that there is any other

26   _____

27         [5] SolarWinds does not directly respond to Maples' contention, other than to note
     there are no substantive differences in the contract laws of California or Oklahoma and that
     the choice of law provision in the Stock Option Agreement "does not alter the analysis."
28   Reply at 1 n.2.

1  reasonable basis for applying Oklahoma law.  To the contrary, the record shows that

2  Maples is a California resident, while SolarWinds is a Delaware corporation headquartered

3  in Austin, Texas.  Thus, the states with a substantial interest are those other than Oklahoma.

4  See Nedlloyd Lines B.V., 3 Cal.4th at 467; see also Restatement (Second) of Conflict of

5  Laws § 187 cmt. f (recognizing that a "substantial relationship" with the chosen state exists

6  where "one of the parties is domiciled or has his principal place of business" there).

7  Accordingly, the Court finds that California law applies to the instant claims at issue in the

8  instant motion to dismiss.

9        **B.    BREACH OF CONTRACT**

10       "[T]he elements of a cause of action for breach of contract are (1) the existence of

11  the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

12  breach, and (4) the resulting damages to the plaintiff."  Oasis West Realty, LLC v.

13  Goldman, 51 Cal.4th 811, 821 (2011).  In his first two causes of action, Maples alleges that

14  SolarWinds breached the Advisor Agreement and Stock Option Agreement by failing to

15  allow him to exercise his stock options.  Compl. ¶¶ 30-37.  SolarWinds denies that it

16  breached these agreements, claiming that by the time Maples sought to exercise his options

17  in 2011, they had already expired.  Mot. at 8-14, Dkt. 43.

18       **1.    Rules Governing Contract Interpretation**

19       Under California law, contracts are to be interpreted to give effect to the mutual

20  intention of the parties at the time of contracting.  Cal.  Civ.  Code § 1638; Waller v. Truck

21  Ins. Exch., 11 Cal.4th 1, 18 (1995).  "[S]uch intent is to be inferred, if possible, solely from

22  the written provisions of the contract," read in their ordinary and popular sense, unless it

23  appears the parties used the terms in some special sense.  AIU Ins. Co. v. FMC Corp., 51

24  Cal.3d 807, 822 (1995) (citing Cal. Civ. Code § 1639).  "[T]he meaning of a contract must

25  be derived from reading the whole of the contract, with individual provisions interpreted

26  together, in order to give effect to all provisions and to avoid rendering some meaningless."

27  Zalkind v. Ceradyne, Inc., 194 Cal. App. 4th 1010, 1027 (2011).  "When interpreting

28  contracts, the language used controls if it is clear and explicit."  Segal v. Silberstein, 156

1  Cal. App. 4th 627, 633 (2007).  But where a contract is "capable of two or more

2  constructions, both of which are reasonable," it is considered ambiguous.  TRB Invs., Inc.

3  v. Fireman's Fund Ins. Co., 40 Cal.4th 19, 27 (2006).  "When ambiguities . . . cannot be

4  dispelled by application of the other rules of contract interpretation, they are resolved

5  against the drafter."  Badie v. Bank of Am., 67 Cal. App. 4th 779, 798-799 (1998) (citing

6  Cal. Civ. Code § 1654).

7         Aside from its obligation to ascertain whether a contract is clear or ambiguous, a

8  court has a duty to construe a contract to avoid a forfeiture, if at all possible.  See Cal. Civ.

9  Code § 1442 (contractual conditions involving forfeitures strictly construed against "party

10  for whose benefit it is created").  "Forfeitures are not favored by the courts, and, if an

11  agreement can be reasonably interpreted so as to avoid a forfeiture, it is the duty of the

12  court to avoid it."  Universal Sales Corp. v. Cal., Press Mfg. Co., 20 Cal.2d 751, 771

13  (1942)); Chase v. Blue Cross of Cal., 42 Cal. App. 4th 1142, 1157 (1996) ("Forfeiture of a

14  contractual right is not favored in the law").  "Forfeitures, as such, are not favored by the

15  courts, and are never enforced if they are couched in ambiguous terms."  McNeece v.

16  Wood, 204 Cal. 280, 284 (1928).

17         **2.    Contentions**

18         SolarWinds contends that the Advisor Agreement specifically limits Maples' term to

19  four years, from August 13, 2007, to August 12, 2011, and that under the terms of the Stock

20  Option Agreement, he had only ninety days after the end of his term to exercise his options,

21  such that they expired after November 10, 2011.  Mot. at 9-11; Reply at 1-5.  The starting

22  point for determining whether Maples' options have expired is "the language of the

23  contract itself."  Mount Diablo Med. Ctr. v. Health Net of Cal., Inc., 101 Cal. App. 4th 711,

24  722 (2002).  Here, the two agreements at issue—the Advisor Agreement and the Stock

25  Purchase Agreement—each contain different language concerning the time period within

26  which Maples must exercise his options.  The Advisor Agreement provides that "[t]he

27  options will expire on the earlier of three months after the termination of service on the

28  advisory board (or such period as SolarWinds' board of directors may permit) or ten years

1  from the date of the grant."  Id.  In contrast, the Stock Option Agreement specifies that

2  "[t]his Option [i.e., the 5,000 stock options] shall be exercisable for ninety (90) days after

3  the Participant ceases service or employment with the employer for reasons other than

4  Cause, death or Disability," but in no event "may this Option be exercised after the

5  Term/Expiration Date as provided above . . . ."  Compl. Ex. D at 2.

6          According to Maples, although he fully performed under the Advisor Agreement,

7  SolarWinds never actually created an advisory board.  Maples posits that because no

8  advisory board ever existed, he could not have been terminated from "service on the

9  advisory board," meaning that the second deadline—"ten years from the date of the

10  [option] grant"—controls, and the options have yet to expire.[6]  SolarWinds does not dispute

11  that Maples' proposed construction of the Advisor Agreement is facially reasonable, but

12  instead argues that the Court should disregard the expiration language of the Advisor

13  Agreement on the ground that the grant of the options is controlled exclusively by the Stock

14  Option Agreement.  Unlike the Advisory Agreement, the Stock Option Agreement makes

15  no reference to service on the advisory board and specifies only that the options must be

16  exercised within ninety days of the date Maples "ceases service or employment with the

17  employer."  SolarWinds maintains that Maples ceased providing services to SolarWinds

18  after August 12, 2011, and that under the Stock Option Agreement, his options expired

19

20

21

22

23          [6] SolarWinds contends that if Maples never served on an advisory board, he could
not have earned the options in the first instance.  Reply at 3.  Since SolarWinds did not
24  predicate its motion for summary judgment on Maples' alleged failure to perform, this
argument is not properly before the Court.  See Zamani v. Carnes, 491 F.3d 990, 997 (9th
25  Cir. 2007) ("The district court need not consider arguments raised for the first time in a
reply brief.").  In any event, the record shows that, pursuant to the Advisor Agreement,
26  Maples routinely provided consulting services to SolarWinds.  There no evidence that
SolarWinds ever expressed any concern to Maples that he was not satisfactorily performing
27  under the agreement.

28

ninety days thereafter—irrespective of the fact that he was never actually terminated from an advisory board.  Reply at 1-3.[7]

The Court is unpersuaded that SolarWinds is entitled to summary judgment in its favor on Maples' breach of contract claims.  As an initial matter, SolarWinds' argument fails to account for the conflicting provisions regarding the expiration of Maples' stock options.  As noted, the triggering provisions are different; i.e., "termination of service on the advisory board" versus "ceases service . . . with the employer."[8]  SolarWinds offers no explanation for these discrepancies or how to reconcile them.  SolarWinds simply argues that because the options are subject to the terms of the Stock Option Agreement, the Court should simply disregard the language in the Advisor Agreement pertaining to the timeframes by which Maples must exercise his options.  The flaw in that argument is that it overlooks the fundamental rule of contract interpretation that specific terms of a contract cannot be ignored.  See Lyons v. Fire Ins. Exch., 161 Cal. App. 4th 880, 886-887 (2008) (a court cannot read contract so as to ignore certain of its provisions, as "such a reading would be contrary to the rule that all words in a contract are to be given meaning" with the

---

[7] SolarWinds contends that if Maples never served on an advisory board, he could have earned the options in the first instance.  Reply at 3.  Since SolarWinds did not predicate its motion for summary judgment on Maples' alleged failure to perform, this argument is not properly before the Court.  See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  In any event, the record shows that, pursuant to the Advisor Agreement, Maples routinely provided consulting services to SolarWinds.  There no evidence that SolarWinds ever expressed any concern to Maples that he was not performing under the agreement.  To the contrary, the evidence presented shows that SolarWinds was satisfied with his services.

[8] The operative time periods are different, as "three months" is not the same as "ninety (90) days."  See Allen v. Stoddard, 212 Cal. App. 4th 807, 811 (2013) (noting a "three month" deadline is "distinct" from a "ninety day" deadline).

1    "language in the contract 'interpreted as a whole'").[9]  At the very least, these conflicting

2    expiration provisions create an ambiguity which is construed against SolarWinds.  See

3    Garvey v. State Farm Fire & Cas. Co., 48 Cal.3d 395, 433 (1989) (ambiguities are to be

4    construed against the drafter).[10]

5        Moreover, SolarWinds' contention that the options have expired is contrary to the

6    rule that where there are two or more reasonable interpretations of a contract, the court is

7    obligated to adopt the interpretation that avoids a forfeiture.  See Milenbach v. C.I.R., 318

8    F.3d 924, 936 (9th Cir. 2003) ("Where there are two possible interpretations of a contract,

9    one that leads to a forfeiture and one that avoids it, California law requires the adoption of

10   the interpretation that avoids forfeiture, if at all possible"); Ballard v. MacCallum, 15

11   Cal.2d 439, 444 (1940) ("We have two possible constructions, one of which leads to a

12   forfeiture and the other avoids it.  In such a case the policy and rule are settled, both in the

13   interpretation of ordinary contracts and instruments transferring property, that the

14   construction which avoids forfeiture must be made if it is at all possible.").  Here, Maples

15   has provided a reasonable interpretation of the subject agreements; to wit, that because he

16   was never terminated from the advisory board, the options are exercisable up to ten years

17   after the options grant.  The fact that the Stock Option Agreement specifies a contradictory

18   _____

19   [9] Arguably, SolarWinds' argument might have been colorable if the Advisor Agreement were silent as to when Maples must exercise his options.  See St. Paul Mercury Ins. Co. v. Am. Safety Indem. St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co., No. C

20   12-5952 LHK, 2014 WL 2120347, *10 (N.D. Cal. May 21, 2014) ("The doctrine of incorporation by reference allows a document or provision to be read into an agreement despite being omitted from the agreement itself.") (citing 11 Richard A. Lord, Williston on

21   Contracts § 30:25 (4th ed. 2011)).  However, the Advisor Agreement is not silent, and, in fact, provides explicit criteria and deadlines governing the exercise of the options which are

22   inconsistent with those purportedly incorporated by reference from the Stock Option

23   Agreement.

24   [10] Indeed, SolarWinds, after consulting with its legal counsel, originally believed that Maples had 15,000 shares (due to the 3-to-1 stock split) that were exercisable at the

25   time of his inquiry in 2011.  SolarWinds counters that its ostensibly erroneous belief carries no legal effect.  Mot. at 12.  The cases cited by SolarWinds, i.e., Jones v. Bank of Am.,

26   N.A., 311 F. Supp. 2d 828, 834 (D. Ariz. 2003) and Roy v. General Electric Company, 544 F. Supp. 2d 103, 109 (D.R.I. 2008), are inapposite, as neither involved a situation where the

27   plaintiff was subject to two conflicting provisions regarding when he must exercise his options.  In any event, even if SolarWinds' mistake carries no legal consequence, it

28   certainly underscores the ambiguity in the contracts that form the basis of this action.

1   expiration provision underscores the lack of merit underlying SolarWinds' position.  See

2   McNeece, 204 Cal. at 284 (ambiguous contracts cannot support a forfeiture); Universal

3   Sales Corp., 20 Cal.2d at 771 ("A contract is not to be construed to provide a forfeiture,

4   unless no other interpretation is reasonably possible."). Accordingly, SolarWinds' motion

5   for summary judgment on Maples' first and second causes of action for breach of contract

6   is DENIED.[11]

7        **C.    BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

8        "[E]very contract contains an implied covenant of good faith and fair dealing that

9   neither party will do anything which will injure the right of the other to receive the benefits

10  of the agreement."  Wolf v. Walt Disney Pictures & Tel., 162 Cal. App. 4th 1107, 1120

11  (2008) (internal quotations omitted).  To establish a claim for breach of the implied

12  covenant, the plaintiff must show that the defendant "lacked subjective good faith in the

13  validity of its act" or that "the act was intended to and did frustrate the common purpose"

14  of the underlying contract.  Id. at 1123.

15       In the instant case, Maples alleges that SolarWinds breached the implied covenant of

16  good faith and fair dealing by terminating him "in August 2011 retroactively without

17  notifying him, and while he was still acting as an advisor, it breached the covenants of good

18

---

19       [11] As an alternative matter, Maples argues that even if the Stock Option Agreement
    "ceases service . . . with the employer" provision controlled to the exclusion of the Advisor

20  Agreement, he remained an advisor to SolarWinds after his initial four-year term expired
    because the agreement auto-renewed after the initial four-year term and neither party

21  sought to terminate the relationship thereafter. SolarWinds counters that Maples' evidence
    on this point—i.e., statements by Van Zant regarding the SolarWinds' intent in entering

22  into a contract with Maples, see Van Zant Decl. ¶ 9, are inadmissible as parol evidence on
    the ground that they contradict the terms of the Advisor Agreement.  See Haggard v.

23  Kimberly Quality Care, Inc., 39 Cal. App. 4th 508, 518 (1995) ("If the proposed parol
    evidence directly contradicts an express provision of the written agreement, however, it

24  cannot reasonably be presumed that the parties intended to integrate two directly
    contradictory terms in the same agreement.") (internal quotations omitted).  No direct

25  contradiction is apparent.  The Advisor Agreement clearly contemplates service beyond
    four years, otherwise it would not have included a provision that the options would expire

26  three months after termination from the advisory board or up to ten years from the option
    grant.  SolarWinds also contends that Maples provided no consultations after 2010.

27  However, there is some evidence that both parties comported themselves as if the
    relationship were continuing.  Ultimately, the Court need not resolve these particular

28  arguments in light of its conclusion that the expiration provisions of the subject agreements
    are ambiguous.

faith and fair dealing in the Stock Option Agreement and in the Advisor Agreement." Compl. ¶ 40. To the extent that Maples is claiming that SolarWinds should have informed him in August 2011 that his Advisor role had ended so that he would have known to timely exercise his options, no such obligation is stated or implied in either of the agreements at issue. See Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal. App. 4th 52, 59 (2000) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").

In his opposition, Maples posits a new claim that SolarWinds breached the implied covenant of good faith and fair dealing by declining to extend the time period within which to exercise his stock options. Opp'n at 17-18, Dkt. 58. On a motion for summary judgment, the plaintiff's allegations and theories of liability are confined to those found in the operative complaint. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."). Since this particular claim is not alleged in the pleadings, it not properly before the Court. See Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to allow the plaintiff to assert new specific factual allegations in support of a claim when they were "presented for the first time in [the plaintiff's] opposition to summary judgment"). But even if it were alleged, SolarWinds cannot be found liable simply for declining to extend the time period for Maples to exercise his options in the absence of any legal or contractual obligation to do so. Accordingly, SolarWinds' motion for summary judgment on Maples' third cause of action for breach of the implied covenant of good faith and fair dealing is GRANTED.

### D. UNJUST ENRICHMENT

The elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. Peterson v. Cellco P'ship, 164 Cal.App.4th 1583, 1593 (2008). "[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the

1    parties."  Paracor Fin. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); Cal.

2    Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc., 94 Cal. App. 4th 151, 172 (2001) ("[A]s

3    a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here,

4    express binding agreements exist and define the parties' rights.").  Because express

5    agreements (i.e., the Advisor Agreement and the Stock Option Agreement) define Maples'

6    right to the options, his stand-alone claim for unjust enrichment claim cannot survive.

7             Citing Hernandez v. Lopez, 180 Cal. App. 4th 932 (2009), Maples contends that he

8    should be able to proceed on an unjust enrichment theory in the event he is precluded from

9    recovery under the two agreements at issue.  The court in Hernandez, however, explained

10   that unjust enrichment "does not describe a theory of recovery, but an effect:  the result of a

11   failure to make restitution under circumstances where it is equitable to do so."  Id. at 939

12   (internal quotations and citations omitted).  As such, the court recognized that "a plaintiff

13   need not amend his pleading to seek compensation under an unjust enrichment theory, but

14   could do so based on the pleaded cause of action for breach of contract."  Id.  Here, the fact

15   that Maples cannot state an independent claim for unjust enrichment will not preclude his

16   recovery on an unjust enrichment theory.  See Unique Functional Prods., Inc. v. JCA Corp.,

17   No. 9-cv-265-JM-MDD, 2012 WL 367245, at *3 n.2 (S.D. Cal. Feb. 3, 2012) ("The court

18   notes that the disposition of this issue [i.e., the dismissal of the unjust enrichment claim]

19   will not preclude JCA's recovery on an unjust enrichment theory if the facts eventually

20   demonstrate that no contract covers the dispute at issue").  Accordingly, SolarWinds'

21   motion for summary judgment on Maples' fifth cause of action for unjust enrichment is

22   GRANTED.

23        **E.  UNFAIR COMPETITION**

24             California's Unfair Competition Law ("UCL") makes actionable any "unlawful,

25   unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each

26   prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc.,

27   590 F.3d 955, 959 (9th Cir. 2009).

28

1    SolarWinds briefly contends that Maples' UCL claim is derivative of his other

2  causes of action, and since those claims fail, so too must his claim under the UCL.  Mot. at

3  19.  Maples agrees that his UCL claim stands or falls depending on the Court's assessment

4  of his other causes of action.  Opp'n at 2.  Accordingly, SolarWinds' motion for summary

5  judgment as to Maples seventh cause of action under the UCL is GRANTED IN PART and

6  DENIED IN PART, as set forth in this Order.

7        **F.    REMAINING CAUSES OF ACTION**

8    With regard to his fourth cause of action for wrongful termination in violation of

9  public policy and sixth cause of action for promissory fraud, Maples states that he is

10  "voluntarily withdrawing" those claims.  Opp'n at 2.  In response, SolarWinds faults

11  Maples for not abandoning these claims earlier, and urges the Court to grant summary

12  judgment on both claims.  Id.[12]  SolarWinds' contention lacks merit.  The proper course of

13  action is to construe Maples' voluntary withdrawal as a motion to amend under Federal

14  Rule of Civil Procedure 15(a).  Hells Canyon Preservation Council v. U.S. Forest Serv.,

15  403 F.3d 683, 689 (9th Cir. 2005 ("what the district court should have done, and what we

16  believe it did do, was treat [plaintiff's] oral withdrawal of its Wilderness Act claim as a

17  motion to amend its complaint under Rule 15(a).").  Since SolarWinds does not object to

18  Maples' withdrawal of the claims, the Court construes such withdrawal as a motion to

19  amend, which is GRANTED.  Accordingly, SolarWinds' motion for summary judgment as

20  to these claims is DENIED as moot.  Id.

21  **IV.   CONCLUSION**

22    For the reasons stated above,

23    IT IS HEREBY ORDERED THAT:

24    1.    Plaintiff's motion for leave to file a surreply is DENIED as moot.

25

26    _____
       [12] It is somewhat troubling that Maples failed to dismiss his wrongful termination
27  and promissory fraud claims earlier—at the very least after the close of discovery and
    before SolarWinds briefed its motion for summary judgment.  A meaningful meet and
    confer process should have resulted in the elimination of these claims before SolarWinds
28  expended time and resources addressing them in its summary judgment motion.

1    2.    Defendant's motion for summary judgment is DENIED as to the causes of

2 action for breach of contract; GRANTED as to the causes of action for breach of the

3 implied covenant of good faith and fair dealing and unjust enrichment; and GRANTED IN

4 PART and DENIED IN PART as to the cause of action for violation of the UCL.

5    3.    Plaintiff's requests to withdraw his causes of action for wrongful termination

6 in violation of public policy and promissory fraud are construed as a motion to amend

7 under Rule 15(a), and such motion is GRANTED.  Defendant's motion for summary

8 judgment as to these two causes of action is DENIED as moot.

9    4.    The parties are ordered to appear before Magistrate Judge Donna Ryu for a

10 further, mandatory settlement conference.  Magistrate Judge Ryu will notify the parties of

11 the date and time of said conference.

12    IT IS SO ORDERED.

13 Dated:  June 20, 2014

SAUNDRA BROWN ARMSTRONG
United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28